UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

| | |
|---|---|
| Starboard Group of Space Coast, LLC | Case No. 6:23-bk-04789 |
| Starboard Group of Southeast Florida, LLC | Case No. 6:23-bk-04791 |
| Starboard Group of Tampa, LLC | Case No. 6:23-bk-04790 |
| Starboard Group of Tampa II, LLC | Case No. 6:23-bk-04793 |
| Starboard Group of Alabama, LLC | Case No. 6:23-bk-04792 |
| Starboard with Cheese, LLC | Case No. 6:23-bk-04796 |
| 7 S&M Foods, LLC | Case No. 6:23-bk-04798 |
| 9 S&M Foods, LLC | Case No. 6:23-bk-04800 |
| 10 S&M Foods, LLC | Case No. 6:23-bk-04802 |
| SBG Burger Opco, LLC; | Case No. 6:23-bk-04797 (Lead Case) |
| Debtors. | Chapter 11 – Jointly Administered |
| _____/ | |

## DEBTORS' EMERGENCY MOTION TO PAY CRITICAL VENDORS

SBG Burger Opco, LLC ("**SBG Burger**"); Starboard Group of Space Coast, LLC ("**SBG Space Coast**"); Starboard Group of Southeast Florida, LLC ("**SBG Southeast**"); Starboard Group of Tampa, LLC ("**SBG Tampa**"); Starboard Group of Tampa II, LLC ("**SBG Tampa II**"); Starboard Group of Alabama, LLC ("**SBG Alabama**"); Starboard with Cheese, LLC ("**SBG Cheese**"); 7 S & M Foods, LLC ("**7SMF**"); 9 S&M Foods, LLC ("**9SMF**"); and 10 S&M Foods, LLC ("**10SMF**") (collectively, the "**Debtors**"), by counsel and pursuant to Sections 105 and 363 of the Bankruptcy Code, respectfully request the entry of an order authorizing the payment of certain prepetition amounts owed to critical vendors. In support of this Motion, the Debtors state as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

1

2. The statutory predicates for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code, Fed. R. Bankr. P. 4001 and Local Rule 2081-1(g)(5)

**Background**

3. On November 14, 2023 (the "**Petition Date**"), the Debtors each filed a Voluntary Petition for Relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4. Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. For brevity and convenience, the Debtors refer the Court and parties in interest to their Case Management Summary, and Declaration of Andrew Levy, being filed contemporaneously with this Motion.

**Relief Requested**

6. By this Motion, the Debtors seek the entry of an order authorizing, but not directing, the Debtors to pay or otherwise honor, in their sole discretion, certain prepetition amounts owed to critical vendors in the ordinary course of business and granting related relief. The Debtors believe they will be able to make these payments due to incoming receipt of accounts receivable and/or debtor in possession financing.

7. To carry out their operations, the Debtors rely upon the services of several vendors and trade suppliers. Without these key vendors, the Debtors' businesses would fail.

8. Some of the vendors are intimately involved with the Debtors' business, and without whose continued commitment the business would suffer. These vendors include **(i)** repairs and maintenance vendors as well as **(ii)** trade vendors providing cash management, computer software, insurance and vitally food products.

9. The Debtors have identified a number of vendors and services providers which are necessary and essential to their continued business operations (the "**Critical Vendors**").

10. These Critical Vendors include those vendors that supply the Debtors' restaurants with ingredients and that maintain the Debtors' food preparation equipment. Both of which are essential to the Debtors' ability to continue operating. Importantly, under the franchise agreements pursuant to which the Debtors' stores are run the Debtors must utilize specific vendors. The amounts due to the Critical Vendors are summarized in **Exhibit A** (the "**Critical Vendor Detail List**").

11. If the Debtors fail to pay these Critical Vendors, the Debtors will likely suffer irreparable harm to continued operations.

12. The Critical Vendors typically supply their customers with services and products on trade terms based on their experience with and perceived risk of conducting business with such customers.

13. Many of these Critical Vendors are mandated by Wendy's franchise agreements, such that the Debtors do not have the ability to change suppliers without violating franchise agreements that are necessary to the Debtors reorganization and exit from bankruptcy.

14. The Debtors believe that it would be exceedingly difficult, if not impossible, to replace the Critical Vendors within a reasonable time without severe and irreparable harm to the Debtors' business. Such harm would likely far outweigh the cost of payment of the Critical Vendor claims (the "**Critical Vendor Claims**").

15. Should the Debtors operations go dark, the inevitable damage and potential loss of employees could be catastrophic to the reorganization process.

16. Given the importance of the goods and services provided by the Critical Vendors, it is imperative that the Debtors are granted the flexibility and authority to satisfy the prepetition Critical Vendor Claims to the extent it has funding to do so and subject to negotiations with such Critical Vendors regarding amounts and timing of payments. The Debtors believes that the Critical Vendor Claims are fair and reasonable for the goods and services provided, and that provided the accounts receivables are received in the ordinary course and/or the Debtors receive approved post-petition financing the Debtors should be authorized to pay Critical Vendors.

17. To the extent the Critical Vendors will not provide goods and services without payment of the Critical Vendor Claims, a sound business justification exists for the relief requested. Moreover, maintaining favorable trade terms and credit is in the best interest of the estate, all creditors and other parties in interest.

18. Additionally, there will be no prejudice to other creditors resulting from the Court's authorization of the requested payments to the Critical Vendors requested herein. Such payments are absolutely essential to the Debtors' continued business operations and revenue generation, which benefits all creditors by maintaining the value of the Debtors' operations.

19. Absent the relief sought, the Debtors going concern value will be substantially harmed to a greater extent than any possible harm resulting from use of cash and debtor-in-possession financing to fund prepetition debts that allow the restaurants to remain open.

20. A proposed form of Order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

### Legal Basis for Relief Sought

**A.    The Court Should Grant Debtors' Request to Pay the Critical Vendor Claims Pursuant to 11 U.S.C. §§ 363(b)(1) and 105(a).**

21. The Court may grant the relief requested herein pursuant to section 363 of the

Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [Debtors], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a Debtors to pay certain prepetition claims where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims for suppliers).

22. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the Debtors-in- possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the Debtors' creditors and other parties in interest. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); see also *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.),* 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtors became Debtors in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

23. In *In re Tropical Sportwear Int'l Corp.,* 320 B.R. 15 (Bankr. M.D. Fla. 2005), the

court held that it would exercise its authority pursuant to sections 105 and 363 of the Bankruptcy Code to issue orders providing for the payment of pre-petition amounts to critical vendors only if:

> [A]n evidentiary record establishes that: **(i) the payments are necessary to the reorganization process; (ii) a sound business justification exists in that the critical vendor(s) refuse to continue to do business with the Debtors absent being afforded critical vendor status; and (iii) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered.** *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175–77 (Bankr.S.D.N.Y.1989) (A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the Debtors is not a novel concept.") . . . .

*Id*. at *17 (approving critical vendor motion) (emphasis added).

**B.    The Payment of the Critical Vendor Claims is Proper Under the Doctrine of Necessity and Bankruptcy Rule 6003.**

24.    Pursuant to Local Rule 2081-1(g)(5) this Motion must include "facts and law supporting payment of the prepetition debt under the doctrine of necessity." Payment of the Critical Vendor Claims is proper under the doctrine of necessity because the payment is necessary to facilitate the continued operation and rehabilitation of the Debtors. Moreover, the payment is proper under Bankruptcy Rule 6003 because said relief is necessary to avoid immediate and irreparable harm to the Debtors.

25.    In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a Debtors' estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.,* 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey,* 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims

beyond railroad reorganization cases), cert. denied 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

26. This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise *its* equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to Debtors' continued operation); *In re Structurlite Plastics Corp.,* 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) ("[A] per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 in "facilitating the continued operation and rehabilitation of the Debtors." *Ionosphere Clubs*, 98 B.R. at 176.

27. This flexible approach is particularly critical where, as here, prepetition creditors are crucial to the preservation of the Debtors' going concern value as operating restaurant franchises. In *In re Structurlite Plastics Corp.,* 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court recognized that "a bankruptcy court may exercise its equity powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the Debtors and payment of creditors in full or at least proportionately.'" *Id*. (citations omitted). The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to

permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id*. at 932.

28. Allowing the Debtors to pay the Critical Vendor Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Indeed, recognizing that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a Debtors' ability to preserve its going-concern and maximize creditor recovery—thereby increasing prospects for a successful restructuring – the Court should grant the relief requested in this Motion.

29. Failure to pay these claims could Bring the Debtors' business to a standstill, which would cause immediate and irreparable harm to the Debtors, its business and its estate.

30. Specific explanations of the importance of each Critical Vendor are contained on the attached Critical Vendor Detail List.

### **Debtors Have Satisfied Bankruptcy Rule 6003(b)**

31. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition. As described above, the Critical Vendors are vital to the Debtors' operations. Failure to satisfy the Critical Vendor Claims in the ordinary course of business during the first 21 days of this chapter 11 case could jeopardize critical relationships and contracts with the Debtors' vendors. The disruption to the Debtors' business and operations and resulting harm could be irreparable. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule

6003 is satisfied.

## Request for Bankruptcy Rule 6004(a) and (h) Waivers

32. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and of the 14 day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid irreparable harm to the Debtors' operations. Accordingly, cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

**WHEREFORE,** the Debtors respectfully request the entry of the order attached hereto as Exhibit B, granting the relief requested herein and granting such other relief as the Court deems just and proper.

Dated: November 14, 2023.

Respectfully submitted,

/s/ Megan W. Murray
Thomas M. Messana
Florida Bar Number 991422
Scott A. Underwood
Florida Bar Number 730041
Daniel E. Etlinger
Florida Bar Number 77420
UNDERWOOD MURRAY, P.A.
100 N Tampa, Ste. 2325
Tampa, FL 33602
(813) 540-8401
Email: tmessana@underwoodmurray.com
sunderwood@underwoodmurray.com
detlinger@underwoodmurray.com
*Proposed Counsel to the Debtors*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF, on November 14, 2023, including the United States Trustee, who is registered to receive electronic notices in this case, and mailed via U.S. Mail to those Critical Vendors on Exhibit A, the attached Consolidated Largest 20 Unsecured Creditor list, which includes the Local Rule 1007-2 parties in interest list, and to the United States Trustee as indicated below

Office of the United States Trustee
Geroge C. Young Federal Building
400 W. Washington St.
Suite 1100
Orlando FL, 32801

                                                                              /s/ Megan W. Murray
                                                                              Megan W. Murray

# EXHIBIT A

| R&M Vendors | Critical |
|---|---|
| **Row Labels** | **Sum of Amount** |
| ADDILAN GROUP, LLC | 2,161.75 |
| ADVANCED PARTS AND SERVICE | 21,946.28 |
| AIRMASTERS | 5,383.30 |
| AYDELOTT EQUIPMENT, INC. | 107,318.99 |
| COMMERCIAL FIRE, LLC | 8,667.18 |
| ECOLAB (PEST ELIMINATION) | 65,679.74 |
| ECOLAB, INC. | 5,364.67 |
| EICHENAUER SERVICES, INC. | 11,166.13 |
| ENGELS COMMERCIAL APPLIANCE, INC. | 19,506.56 |
| FRANKLIN MACHINE PRODUCTS | 23,271.49 |
| LIFE SAFETY ENGINEERED SYSTEMS, INC | 94,099.49 |
| LIQUID ENVIRONMENTAL SOLUTIONS | 40,378.61 |
| MIDWEST EQUIPMENT COMPANY | 1,858.28 |
| SOUTHEASTERN PROTECTION SERVICES OF FL. | 12,097.25 |
| TAYLOR ENTERPRISES OF WISCONSIN | 769.89 |
| TAYLOR FREEZER SALES LLC. - TAMPA | 7,695.41 |
| TAYLOR SALES & SERVICE | 10,116.27 |
| TAYLOR ULTIMATE SERVICES | 6,473.69 |
| VAN'S FIRE & SAFETY, INC. | 537.93 |
| **Grand Total** | **444,492.91** |

Trade Vendors

| Service | Name | Amount Owed | Est or Act | Why They Are Critical |
|---|---|---|---|---|
| Cash Management | Loomis | 105,810.79 | Act | Cash Pickup and Smart Safes |
| Computer Related | NCR | 95,559.43 | Act | Aloha - POS Software |
| Computer Related | Viking Cloud | 22,620.44 | Act | Firewall |
| Food | Bimbo QSR | 55,983.07 | Act | Food Vendor |
| Food | Southestern Food | 131,480.74 | Act | Food Vendor |
| Food | Sygma | 617,890.01 | Act | Food Vendor |
| Food | Upper Lakes | 46,484.45 | Act | Food Vendor |
| Insurance | Zurich Affinity | 242,644.72 | Act | General Liability and Workers Compensation |
| Utilities | Various | 60,000.00 | Est | Various Electric, Gas, Water Sewer |

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

| | |
|---|---|
| Starboard Group of Space Coast, LLC | Case No. 6:23-bk-04789 |
| Starboard Group of Southeast Florida, LLC | Case No. 6:23-bk-04791 |
| Starboard Group of Tampa, LLC | Case No. 6:23-bk-04790 |
| Starboard Group of Tampa II, LLC | Case No. 6:23-bk-04793 |
| Starboard Group of Alabama, LLC | Case No. 6:23-bk-04792 |
| Starboard with Cheese, LLC | Case No. 6:23-bk-04796 |
| 7 S&M Foods, LLC | Case No. 6:23-bk-04798 |
| 9 S&M Foods, LLC | Case No. 6:23-bk-04800 |
| 10 S&M Foods, LLC | Case No. 6:23-bk-04802 |
| SBG Burger Opco, LLC; | Case No. 6:23-bk-04797 (Lead Case) |
| Debtors. _____/ | Chapter 11 – Jointly Administered |

**ORDER GRANTING DEBTORS'**
**EMERGENCY MOTION TO PAY CRITICAL VENDORS**
(Doc. No. ___)

12

THIS CASE came on for consideration without a hearing on the Debtors' Emergency Motion to Pay Critical Vendors (Doc. No. ___) (the "**Motion**") filed by the debtors SBG Burger Opco, LLC; Starboard Group of Space Coast, LLC; Starboard Group of Southeast Florida, LLC; Starboard Group of Tampa, LLC; Starboard Group of Tampa II, LLC; Starboard Group of Alabama, LLC; Starboard with Cheese, LLC; 7 S&M Foods LLC; 9 S&M Foods, LLC and 10 S&M Foods, LLC (the "**Debtors**"). Having reviewed the Motion the Court finds the relief requested is justified.  Accordingly, it is

**ORDERED THAT:**

1. The Motion is **GRANTED.**

2. The Debtors are authorized, but not directed, to pay the Critical Vendors listed on Exhibit A to the Motion, and such payment shall be conditioned upon the supply of goods and services to the Debtors post-petition on the same terms and conditions as existed prior to the Petition Date.

3. To the extent necessary, any payments made pursuant to this Order shall be considered authorized uses of "Cash Collateral".

4. The Court retains jurisdiction over all matters arising from the Motion or related to implementation or enforcement of this Order.