**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

| | |
|---|---|
| Starboard Group of Space Coast, LLC | Case No. 6:23-bk-04789-TPG |
| Starboard Group of Southeast Florida, LLC | Case No. 6:23-bk-04791-TPG |
| Starboard Group of Tampa, LLC | Case No. 6:23-bk-04790-TPG |
| Starboard Group of Tampa II, LLC | Case No. 6:23-bk-04793-TPG |
| Starboard Group of Alabama, LLC | Case No. 6:23-bk-04792-TPG |
| Starboard with Cheese, LLC | Case No. 6:23-bk-04796-TPG |
| 7 S&M Foods, LLC | Case No. 6:23-bk-04798-TPG |
| 9 S&M Foods, LLC | Case No. 6:23-bk-04800-TPG |
| 10 S&M Foods, LLC | Case No. 6:23-bk-04802-TPG |
| SBG Burger Opco, LLC; | Case No. 6:23-bk-04797-TPG (Lead Case) |
| | Chapter 11 – Jointly Administered |
| Debtors. | (proposed) |

_____/

**DEBTORS' EMERGENCY APPLICATION FOR ENTRY**
**OF AN ORDER (A) AUTHORIZING THE RETENTION AND**
**APPOINTMENT OF STRETTO, INC. AS CLAIMS, NOTICING, AND**
**SOLICITATION AGENT AND (B) GRANTING RELATED RELIEF**

SBG Burger Opco, LLC ("**SBG Burger**"); Starboard Group of Space Coast, LLC ("**SBG Space Coast**"); Starboard Group of Southeast Florida, LLC ("**SBG Southeast**"); Starboard Group of Tampa, LLC ("**SBG Tampa**"); Starboard Group of Tampa II, LLC ("**SBG Tampa II**"); Starboard Group of Alabama, LLC ("**SBG Alabama**"); Starboard with Cheese, LLC ("**SBG Cheese**"); 7 S&M Foods, LLC ("**7SMF**"); 9 S&M Foods, LLC ("**9SMF**") and 10 S&M Foods, LLC ("**10SMF**") (collectively, the "**Debtors**"), by counsel and pursuant to Sections 327, 330 and 331 of the Bankruptcy Code, hereby file this Application to Employ Stretto, Inc. ("**Stretto**") ("**Application**"):[1]

---

[1] Capitalized terms used but not immediately defined have the meanings given to them elsewhere in this Application or in the First Day Declaration, as applicable.

## **Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit C** (the "**Order**"): (a) authorizing the Debtors to retain and appoint Stretto as claims, noticing, and solicitation agent (the "**Claims and Noticing Agent**") in the Debtors' chapter 11 cases; and (b) granting related relief.

2.      Specifically, the Debtors request entry of an order authorizing the Debtors to retain and appoint the Claims and Noticing Agent to provide, among other tasks: preparation of schedules of assets and liabilities, statement of financial affairs, search of (i) national, (ii) state and local public records, (iii) land records, (iv) judgment records, (v) UCC, (vi) judgment lien, (vii) secretary of state for all relevant jurisdictions, legal noticing, maintenance of claims registers and reconciliation, creditor mailing matrices, an electronic platform for filing claims and supporting documents, claim noticing, claim responses, plan solicitation and balloting, disbursements, crisis communications, claims analysis and reconciliation, contract review and analysis, case research, depository management, treasury services, confidential online workspaces or data rooms, (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (the "**Stretto Services**").

3.      In support of this Application, the Debtors submit the Declaration of Sheryl Betance, Managing Director, Corporate Restructuring of Stretto, in Support of Debtors' Application for Entry of an Order (A) Authorizing the Retention and Appointment of Stretto as Claims, Noticing, and Solicitation Agent and (B) Granting Related Relief (the "**Betance Declaration**"), attached hereto as **Exhibit A.**

**Jurisdiction and Venue**

4.    The United States Bankruptcy Court for the Middle District of Florida (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The bases for the relief requested herein are 28 U.S.C. § 156(c), sections 105(a), 327, 328(a), and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), and Bankruptcy Rules 2002(f), 2014(a), 2016, and 6003.

**Background**

7.    On the date hereof (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Andrew Levy in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), filed in support of this Application and incorporated by reference herein.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Application, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

## Basis for Relief

8.      The Debtors request entry of the order (a) authorizing the retention and appointment of Stretto as the Claims and Noticing Agent for the Debtors and their chapter 11 cases, to, among other tasks, provide the Stretto Services, pursuant to the provisions of the engagement agreement, attached hereto as **Exhibit B** (the "**Engagement Agreement**") and (b) granting related relief.  The Debtors' selection of Stretto to act as the Claims and Noticing Agent is appropriate under the circumstances and in the best interest of the estates.  Moreover, the Debtors submit that, based on all engagement proposals obtained and reviewed, Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.  The terms of Stretto's retention are set forth in the Engagement Agreement.

9.      Although the Debtors have not yet filed their schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), they anticipate that thousands of parties will need to be noticed.  In view of the number of anticipated notice parties and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent will provide the most effective and efficient means of, and relieve the Debtors and/or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") of the administrative burden of, noticing, administering claims, and soliciting and tabulating votes and is in the best interests of both the Debtors' estates and their creditors.

## Stretto's Qualifications

10.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as official claims and

noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include: *In re Stein Mart Inc.,* Case No. 20-02387 (JAF) (Bankr. M.D. Fla. Aug. 14, 2020); *In re Off Lease Only LLC*, Case No. 23-11388 (CTG) (Bankr. D. Del. Sept. 15, 2023); *In re Windsor Terrace Healthcare, LLC*, Case No. 23-11200 (VSK) (Bankr. C.D. Cal. Sept. 15, 2023); *In re Benitago Inc.*, Case No. 23-11394 (SHL) (Bankr. S.D.N.Y. Sept. 12, 2023); *In re Soft Surroundings Holdings, LLC*, Case No. 23-90769 (CML) (Bankr. S.D. Tex. Sept. 11, 2023); *In re Sunland Med. Found.*, Case No. 23-8000 (MVL) (Bankr. N.D. Tex. Aug. 31, 2023); *In re Nashville Senior Care, LLC*, Case No. 23-02924 (MFH) (Bankr. M.D. Tenn. Aug. 16, 2023); *In re Vantage Travel Serv., Inc.*, Case No. 23-11060 (JEB) (Bankr. D. Mass. July 27, 2023); *In re Whittaker, Clark & Daniels, Inc.*, Case No. 23-13575 (MBK) (Bankr. D.N.J. May 8, 2023); and *In re Allied Healthcare Prods., Inc.*, Case No. 23-41607 (BCW) (Bankr. E.D. Mo. June 30, 2023).[2]

## Services to be Provided

11. This Application pertains to the work to be performed by Stretto under section 327(a) of the Bankruptcy Code and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c). Under the Engagement Agreement, Stretto will perform the following services (collectively, the "**Stretto Services**, as the Claims and Noticing Agent, at the request of the Debtors or the Clerk, which include in greater detail the following:

  (a)   **Legal Noticing.**

---

[2]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

(b)     Assist the Debtors with the preparation and distribution of all required notices and documents in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including:  (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under Bankruptcy Code section 341(a);  (ii) notice of any claims bar date; (iii) notice of any proposed sale of the Debtor's assets; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of any plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors, Court, or Clerk may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(c)     for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service on an as-needed basis: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

(d)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(e)     identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information is available);

(f)     **Schedules**. Prepare and maintain an official copy of the Debtors' Schedules, listing the Debtors' known creditors and the amounts owed thereto, which includes a search of national and state records to assist in the foregoing;

(g)     **Claims Register.**

(i)     Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and update and make said lists available upon request by a party-in-interest or the Clerk; and

(ii)    to the extent applicable, furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors; and

(iii)    provide an electronic interface for filing proofs of claim;

(iv)    maintain a post office box or address for receiving claims and returned mail, and process all mail received;

(j)    receive and process all proofs of claim, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(k)    maintain the official claims register for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) address for payment, if different from the notice address; (v) the amount asserted; (vi) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vii) the applicable Debtor; and (viii) any disposition of the claim;

(l)    provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(m)    record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(n)    implement reasonable security measures designed to ensure the completeness and integrity of the Claims Registers and the safekeeping of any proofs of claim; and

(o)    relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto not less than weekly;

(p)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(q)      provide docket updates via email to parties who subscribe for such service on the Debtors' case website;

(r)      comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements in connection with the Services rendered pursuant to the Engagement Agreement;

(s)      if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within 3 days of notice to Stretto of entry of the order converting the cases;

(t)      30 days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Stretto as claims, noticing, and solicitation agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(u)      within 7 days of notice to Stretto of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the cases;

(v)      at the close of these chapter 11 cases:  (i) box and transport all original documents, in proper format, as provided by the Clerk, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154, or (B) any other location requested by the Clerk; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims;

(w)      assist the Debtors with, among other things, plan-solicitation services including: (i) balloting; (ii) distribution of applicable solicitation materials; (iii) tabulation and calculation of votes; (iv) determining with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, Bankruptcy Rules, and procedures ordered by this Court; (v) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results; and (vi) in connection with the foregoing services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(x)      if requested, assist with the preparation of the Debtors' Schedules and gather data in conjunction therewith;

(y)      provide a confidential data room, if requested;

(z)      coordinate publication of certain notices in periodicals and other media;

(aa)      manage and coordinate any distributions pursuant to a chapter 11 plan; and

(bb)  provide such other claims, noticing, processing, solicitation, balloting, Claims analysis, contract review and analysis, case research, depository management, treasury services, and other administrative services described in the Engagement Agreement, that may be requested from time to time by the Debtors, the Court, or the Clerk.

**Professional Compensation**

12.     The Debtors respectfully request that the undisputed fees and expenses incurred by Stretto in the performance of the above Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court.

13.     Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve, no less frequently than monthly, invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party in interest who specifically requests service of the monthly invoices.   If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.   If resolution is not achieved, the parties may seek resolution of the matter from this Court.

14.     Prior to the Petition Date, the Debtors provided Stretto an advance in the amount of $20,000.  Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

15.     In addition, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify and hold harmless Stretto and its members, directors, officers, employees,

representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from the actions attributable or representations made by the Debtors but arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party for actions attributable or representations made by the Debtors.

16.     The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

### Disinterestedness

17.     Stretto has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

18.     To the best of the Debtors' knowledge, Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as Stretto represents in the Betance Declaration, among other things, that:

> (a)     Stretto is not a creditor of the Debtors;
>
> (b)     Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;
>
> (c)     By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d) In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e) Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f) Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

(h) Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i) Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

19. Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

20. To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

21. To the extent necessary, the Debtors request the Court grant this Application notwithstanding Rule 6003, as immediate entry of an order granting the relief requested herein is necessary to avoid irreparable harm due to the Debtors' immediate need for Stretto's services as set forth herein.

**Notice**

22. Notice of the hearing on the relief requested in this Application will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the Office of the U.S. Trustee for the Middle District of Florida; (b) entities listed as holding the 20 largest unsecured claims against the Debtors (on a consolidated basis); and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002 or who is registered to receive electronic services under CM/ECF.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested in this Application and granting such other and further relief as is appropriate under the circumstances.

Dated: November 15, 2023.

Respectfully submitted,

/s/ Scott A. Underwood
Thomas M. Messana
Florida Bar Number 991422
Scott A. Underwood
Florida Bar Number 730041
Daniel E. Etlinger
Florida Bar Number 77420
UNDERWOOD MURRAY, P.A.
100 N Tampa, Ste. 2325
Tampa, FL 33602
(813) 540-8401
Email: tmessana@underwoodmurray.com
       sunderwood@underwoodmurray.com
       detlinger@underwoodmurray.com
*Proposed Counsel to the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF and via first to the attached Local Rule 1007-2 parties in interest list and United States Trustee, George C. Young Federal Building, 400 W. Washington Street, Suite 1100, Orlando, Florida 32801 on this November 15, 2023.

/s/ Scott A. Underwood
Scott A. Underwood

## **EXHIBIT A**

**Betance Declaration**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

| | |
|---|---|
| Starboard Group of Space Coast, LLC | Case No. 6:23-bk-04789-TPG |
| Starboard Group of Southeast Florida, LLC | Case No. 6:23-bk-04791-TPG |
| Starboard Group of Tampa, LLC | Case No. 6:23-bk-04790-TPG |
| Starboard Group of Tampa II, LLC | Case No. 6:23-bk-04793-TPG |
| Starboard Group of Alabama, LLC | Case No. 6:23-bk-04792-TPG |
| Starboard with Cheese, LLC | Case No. 6:23-bk-04796-TPG |
| 7 S&M Foods, LLC | Case No. 6:23-bk-04798-TPG |
| 9 S&M Foods, LLC | Case No. 6:23-bk-04800-TPG |
| 10 S&M Foods, LLC | Case No. 6:23-bk-04802-TPG |
| SBG Burger Opco, LLC; | Case No. 6:23-bk-04797-TPG (Lead Case) |
| | Chapter 11 – Jointly Administered |
| Debtors. | (proposed) |

_____/

**DECLARATION OF SHERYL BETANCE IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF STRETTO, INC. AS CLAIMS, NOTICING, AND SOLICITATION AGENT AND (B) GRANTING RELATED RELIEF**

I, Sheryl Betance, under penalty of perjury, declare as follows:

1.      I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc.

("**Stretto**"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100,

Irvine, California 92602.  Except as otherwise noted in this declaration, I have personal knowledge

of the matters set forth herein, and if called and sworn as a witness, I could and would testify

competently thereto.

2.      I submit this declaration in support of the above-captioned Debtors' (collectively,

the "**Debtors**") *Debtors' Application for Entry of an Order (a) Authorizing the Employment and*

*Retention of Stretto, Inc. as Claims, Noticing, and Solicitation Agent and (b) Granting Related Relief*, filed contemporaneously herewith (the "**Application**").[1]

<u>Qualifications</u>

3.     Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Stretto's active and former cases include: *In re Stein Mart Inc.,* Case No. 20-02387 (JAF) (Bankr. M.D. Fla. Aug. 14, 2020); *In re Off Lease Only LLC*, Case No. 23-11388 (CTG) (Bankr. D. Del. Sept. 15, 2023); *In re Windsor Terrace Healthcare, LLC*, Case No. 23-11200 (VSK) (Bankr. C.D. Cal. Sept. 15, 2023); *In re Benitago Inc.*, Case No. 23-11394 (SHL) (Bankr. S.D.N.Y. Sept. 12, 2023); *In re Soft Surroundings Holdings, LLC*, Case No. 23-90769 (CML) (Bankr. S.D. Tex. Sept. 11, 2023); *In re Sunland Med. Found.*, Case No. 23-8000 (MVL) (Bankr. N.D. Tex. Aug. 31, 2023); *In re Nashville Senior Care, LLC*, Case No. 23-02924 (MFH) (Bankr. M.D. Tenn. Aug. 16, 2023); *In re Vantage Travel Serv., Inc.*, Case No. 23-11060 (JEB) (Bankr. D. Mass. July 27, 2023); *In re Whittaker, Clark & Daniels, Inc.*, Case No. 23-13575

---

[1]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the Application.

(MBK) (Bankr. D.N.J. May 8, 2023); and *In re Allied Healthcare Prods., Inc.*, Case No. 23-41607

(BCW) (Bankr. E.D. Mo. June 30, 2023).[2]

### Services to be Rendered

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**"), the noticing and claims-related services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  In performing such services, Stretto will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit B** to the Application.

5.      Stretto represents, among other things, the following:

(a)     With the possible exception of *de minimis* fees and expenses incurred prior to the Petition Date, Stretto is not a creditor of the Debtors;

(b)     Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)     By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e)     Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

---

[2]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this declaration. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

(f)  Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)  In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

(h)  Stretto shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)  Stretto will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)  None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

6.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, secured creditors, lenders, unsecured creditors, the United States Trustee and any person employed in the office of the United States Trustee, and other parties.  The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries.

7.      Stretto's internal database also includes Stone Point (as defined below), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "**Stone Point Searched Parties**"). The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to promptly file a supplemental declaration.

8.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Stretto has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, in matters unrelated to these chapter 11 cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

9.      Based upon a review of the Potential Parties in Interest:

- The list of Potential Parties in Interest includes entities, as set forth on **Annex 1** attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services. However, to the best of my knowledge, such relationships are materially unrelated to these Chapter 11 Cases.

10.     To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the Middle District of Florida, the United States Trustee for Region 21, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the Middle District of Florida.

11.     Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.  To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by

firms that are Potential Parties in Interest or that have filed a notice of appearance in these Chapter 11 Cases.

12.     Stretto has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, in matters unrelated to these chapter 11 cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

13.     Stretto and its personnel in their individual capacities regularly use the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors.  Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  To the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in these Chapter 11 Cases.

14.     In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point Capital LLC ("**Stone Point**").  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed nine private equity funds – the Trident Funds – with aggregate committed capital of approximately $40 billion.  Stone Point targets investments in the global financial services industry, and related sectors.

15.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.  Stretto has searched the names of the Debtors and the names of the Potential Parties in Interest against the Stone Point Searched Parties.

16.     Based solely on the foregoing search, Stretto has determined that neither the Trident VI Funds, Stone Point nor the Stone Point Searched Parties have been identified on the parties in interest list in these chapter 11 cases as of the date hereof and to the best of its knowledge, that there are no material connections that require disclosure. To the extent Stretto learns of any additional relevant facts or connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors that bear on these chapter 11 cases, Stretto will promptly file a supplemental disclosure.  Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

17.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge.  Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

18.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates.  Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to the above, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained.  Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

19.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtor's estate; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  November 14, 2023

*/s/ Sheryl Betance*

Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, St. 100
Irvine, CA 92602

## **Annex 1**

Alabama Department of Revenue
Aramark Uniform Services
AT&T
City of Baton Rouge
Comcast
Illinois Department of Revenue
Kimco Facility Services LLC
Missouri Department of Revenue
Red Book Solutions
Tech Service Today LLC

# EXHIBIT B

**Engagement Agreement**



## Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of <u>October 10</u>, 2023, between Stretto, Inc. ("**Stretto**") and Starboard Group of Space Coast, LLC. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services in connection with the preparation for and within a potential chapter 11 bankruptcy for the Company (the "**Action**") including, but not limited to, preparation of schedules of assets and liabilities, statement of financial affairs, search of (i) national, (ii) state and local public records, (iii) land records, (iv) judgment records, (v) UCC, (vi) judgment lien, (vii) secretary of state for all relevant jurisdictions, legal noticing, maintenance of claims registers and reconciliation, creditor mailing matrices, an electronic platform for filing claims and supporting documents, claim noticing, claim responses, plan solicitation and balloting, disbursements, crisis communications, claims analysis and reconciliation, contract review and analysis, case research, depository management, treasury services, confidential online workspaces or data rooms, (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company in accordance with the attached rate structure attached hereto as Exhibit B. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly.  Subject to applicable bankruptcy court approval, all invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.  Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.,.



(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 20 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $____20,000.00_____. Stretto may use such advance against unpaid fees and expenses hereunder. The Company shall, upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to its rate structure on a periodic basis and, Stretto shall provide 30 days' notice to the Company of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3. Confidentiality**

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent such party's counsel in good faith determines such disclosure can be limited.



**4.   Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

**5.   Bank Accounts**

At the request of the Company or the Company Parties, and subject to bankruptcy court approval, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate cash management and distributions. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.  In the event that Company commences a proceeding under title 11 of Chapter 11 of the United States Code, Stretto agrees to abide by all requirements relating to the maintenance of bank accounts imposed by the Office of the United States Trustee.

**6.   Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; (ii) immediately upon written notice for Cause (as defined herein); or (iii) immediately upon entry of an applicable court order directing the same. "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice, or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b)  If this Agreement is terminated after Stretto is retained pursuant to a court order, the Company promptly shall seek entry of a court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d)  If this Agreement is terminated, Stretto shall coordinate with the Company to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to Stretto's rate structure.

**7.   No Representations or Warranties**

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.


8. **Indemnification**

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from the actions attributable or representations made by the Company but arising out of, or related to Stretto's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party for actions attributable or representations made by the Company.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat, or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

9. **Limitations of Liability**

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  Absent gross negligence or willful misconduct, Stretto not be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

10. **Company Data**

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data, and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedule of assets and liabilities, notices, schedules, and claim responses (collectively, "**Notice Information**"). Stretto bears no responsibility for the accuracy and content of the Notice Information, and the Company is deemed hereunder to have approved and reviewed all Notice Information filed or served on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs, or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media, or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate

4



and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as <u>Exhibit A</u>, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to a court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**11. California Consumer Privacy Act.**

(a) Definitions.  In this Section,

    (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;

    (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and

    (iii) "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**12. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

**13. Force Majeure**

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

**14. Choice of Law**

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

**15. Arbitration**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by the bankruptcy court in which the Company's bankruptcy case is pending, unless such bankruptcy case has been closed or otherwise incapable of adjudicating such dispute, in which case



it shall be resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.

**16.  Integration: Severability; Modifications: Assignment**

(a)  Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b)  If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)  This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d)  This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17.  Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18.  Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:            Stretto
                          410 Exchange, Ste. 100
                          Irvine, CA 92602
                          Attn: Sheryl Betance
                          Tel: 714.716.1872
                          Email: sheryl.betance@stretto.com

If to the Company:

With a copy to:

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date



first above written.

Stretto

_____Sheryl Betance_____

By: Sheryl Betance
Title: Senior Managing Director


Starboard Group of Space Coast, LLC


_____

By:
Title:

first above written.

Stretto

_____
By:
Title:

Starboard Group of Space Coast, LLC

*Andrew Levy*
_____
By:     Andrew Levy
Title:     Manager

7



**Exhibit A**



## GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

**WHEREAS**,

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.      **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)     "**Addendum**" shall mean this GDPR Addendum;

(b)     "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)     "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)     "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)     "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

1

(f)     "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Company.**  The Company agrees and warrants:

(a)     that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)     that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)     that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)     that it will ensure compliance with the technical and organizational security measures; and

(f)     that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.     **Obligations of the Processor.**  The Processor agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

(c)    that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)    that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)    that it will promptly notify the Company about:

    i.    any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.    any accidental or unauthorized access; and

    iii.    any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)    to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)    to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)    that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.    Obligations after Termination of Personal Data Processing Services.**

(a)    The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data. In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

3

(b)     The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.     **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.



# Preferred Rate Structure

**Consulting Services and Rates**

*Analyst*                                                              *Waived*
The Analyst processes incoming mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required.

*Consultant (Associate/Senior Associate)*                              *$70 - $200*
The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims and ballots, overseeing contract review, overseeing all physical and electronic noticing, and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director*                                          *$210 - $250*
The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*Executive Management*                                                 *Waived*
Our Executive Management team oversees Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge.

**Solicitation, Balloting and Tabulation Rates**

*Solicitation Associate*                                               *$230*
The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities & Solicitations*                               *$250*
The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.



## Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 (per image) |
| Postage/Overnight Delivery | Preferred Rates |
| ECF Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Preferred Pricing Available on Request |
| Public Securities Events | Varies by Event |

## Electronic Services

| | |
|---|---|
| Case Homepage Set-Up and Hosting | Waived |
| Robotic Process Automation[1] | Starting at $0.48 (per process) |
| Encrypted HTTPS Bandwidth (volume discount applies) | Starting at $0.125 (per MB) |
| Online Monthly Operating Report Platform Subscription | Waived |

## Claims Administration & Management Expenses

| | |
|---|---|
| License Fee and System Maintenance | $0.10 (per creditor per month) |
| Database and System Access (Unlimited Users) | Waived |
| Online Claims Filing Portal | Waived |
| Online Ballots Filing Portal | Waived |
| Preference Analysis (Initial Preference Review) | Standard Hourly Rates |

## Document Management Services

| | |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| FedRAMP Compliant File Retention (volume discount applies) | Starting at $0.125 (per MB) |
| Virtual Data Room | Available on Request |

## Call Center Support Services

| | |
|---|---|
| Case-Specific Toll-Free Number and Voice-Mail Box | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

## Disbursement Services

| | |
|---|---|
| Check Issuance | Available on Request |
| Account Opening Fee | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |

---

[1] Includes ECF docket automation, subscription-based docket notifications, USPS bulk mail operations, address validation, e-filing transactions, cloud computing charges, and related activities

**EXHIBIT C**

**<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

| | |
|---|---|
| Starboard Group of Space Coast, LLC | Case No. 6:23-bk-04789-TPG |
| Starboard Group of Southeast Florida, LLC | Case No. 6:23-bk-04791-TPG |
| Starboard Group of Tampa, LLC | Case No. 6:23-bk-04790-TPG |
| Starboard Group of Tampa II, LLC | Case No. 6:23-bk-04793-TPG |
| Starboard Group of Alabama, LLC | Case No. 6:23-bk-04792-TPG |
| Starboard with Cheese, LLC | Case No. 6:23-bk-04796-TPG |
| 7 S&M Foods, LLC | Case No. 6:23-bk-04798-TPG |
| 9 S&M Foods, LLC | Case No. 6:23-bk-04800-TPG |
| 10 S&M Foods, LLC | Case No. 6:23-bk-04802-TPG |
| SBG Burger Opco, LLC; | Case No. 6:23-bk-04797-TPG (Lead Case) |
| | Chapter 11 – Jointly Administered |
| Debtors. | (proposed) |

_____/

**ORDER (A) AUTHORIZING THE RETENTION**
**AND APPOINTMENT OF STRETTO, INC. AS CLAIMS, NOTICING,**
**AND SOLICITATION AGENT AND (B) GRANTING RELATED RELIEF**

Upon the application (the "**Application**")[1] of the above-captioned debtors and debtors in

possession (collectively, the "**Debtors**") for entry of an order (this "**Order**"), (a) authorizing the

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

retention and appointment of Stretto, Inc. ("**Stretto**") as claims and noticing agent ("**Claims and Noticing Agent**") pursuant to 28 U.S.C. § 156(c) and sections 105(a) and 327(a) of the Bankruptcy Code, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is approved on a final basis as set forth herein.

2.      The Debtors are authorized to retain and appoint Stretto as Claims and Noticing Agent under the terms of the Engagement Agreement as set forth in this Order, and Stretto is authorized and directed to perform noticing and balloting services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and other related tasks as described as "**Stretto Services**" in the Application, the Engagement Agreement, and this Order.

2

The Clerk shall provide Stretto with ECF credentials that allow Stretto to receive ECF notifications and file certificates of service.

3.       Stretto shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.       Stretto is authorized and directed to provide an electronic interface for filing of proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.  Stretto shall provide public access to the claims register, including complete proofs of claim with attachments, if any, without charge.

5.       Stretto is authorized to take such other action to comply with all duties and Services set forth in the Application.

6.       Notwithstanding sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016, the Debtors are authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.       Stretto shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee

monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtors' estates.

10.     Stretto may apply its advance to all prepetition invoices, which advance may be replenished to the original advance amount, and thereafter, Stretto may hold its advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify the Indemnified Parties (as defined in the Engagement Agreement) under the terms of the Engagement Agreement, paragraph 8, as modified pursuant to this Order.

12.     The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen solely from the Indemnified

Parties' gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (if any) as provided in this Order; (b) for a contractual dispute in which the Debtors allege the breach of the Indemnified Parties' contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (c) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); or (d) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Parties should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing these chapter 11 cases, the Indemnified Parties believe that they are entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification as set forth in paragraph 8 of the Engagement Agreement, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, the Indemnified Parties must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Parties before the entry of an order by this Court approving the payment.  If the Indemnified Parties seek reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to paragraph 8 of the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Indemnified Parties' own applications, both interim and final, but determined by this Court after notice and a

hearing.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

15.     In the event Stretto is unable to provide the Services set out in this Order, Stretto will immediately notify the Clerk and the Debtors' attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

16.     After entry of an order terminating Stretto's services, upon the closing of these cases, or for any other reason, Stretto shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and shall be compensated by the Debtors in connection therewith.

17.     Stretto shall not cease providing claims processing services during the chapter 11 case(s) for any reason, including nonpayment, without an order of the Court.

18.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

19.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

21.    The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

22.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

[Scott A. Underwood is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.]